NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0590n.06
Filed: August 15, 2007

NO. 06-5373

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

EFREN MENDOZA-MENDOZA,

        Defendant-Appellant.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE:    SUHRHEINRICH, CLAY, and SUTTON, Circuit Judges.

        **SUHRHEINRICH, Circuit Judge.** Efren Mendoza-Mendoza ("Mendoza") was convicted for illegal reentry by a deported alien following a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), and was sentenced to 82-months' imprisonment. He raises various claims of error pertaining to his prior Tennessee state conviction for aggravated assault: (1) that his Sixth Amendment right to jury trial was violated because the district judge, rather than a jury, determined the nature of his prior conviction; (2) that his prior conviction was invalid under Tennessee law because the charging papers did not allege all the elements of the aggravated assault; and (3) that his prior conviction does not constitute: (a) an "aggravated felony" under 8 U.S.C. § 1326(b)(2); or (b) a "crime of violence" under U.S.S.G. § 2L1.2(b)(1). For the reasons that follow, we find that Mendoza's challenges to his conviction and sentence lack merit, and **AFFIRM**.

I.

Mendoza is a Mexican national. In October of 2001, he pleaded guilty in a Tennessee state court to aggravated assault, in violation of TENN. CODE ANN. § 39-13-102, and was sentenced to two-years' imprisonment. After the conclusion of his sentence in August of 2002, Mendoza was deported to his native Mexico.

Mendoza thereafter returned to the United States, without permission. In October of 2004, he was indicted for illegal reentry by a deported alien following a conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Mendoza consented to a bench trial and stipulated to all relevant facts, except for the allegation thay he had previously been convicted of an aggravated felony. In its findings of fact and conclusions of law, the district court found as a matter of fact that the government had proven all the elements of § 1326(a) beyond a reasonable doubt, namely that Mendoza was: (1) an alien; (2) who had been deported; (3) and thereafter entered the United States; (4) without the consent of the Attorney General. The district court held that Mendoza was subject to the penalty provision of 8 U.S.C. § 1326(b)(2) because he was deported following an "aggravated felony" conviction; Mendoza's prior Tennessee aggravated assault conviction was a "crime of violence" under 18 U.S.C. § 16, and in turn an "aggravated felony" under 8 U.S.C. § 1326(b)(2). At sentencing, the district court concluded that the aggravated assault conviction constituted a "crime of violence" within the meaning of § 2L1.2(B)(1)(A)(ii) of the Guidelines, and added sixteen levels to Mendoza's offense level. Mendoza was sentenced to 82-months' incarceration.

## II.

We first address Mendoza's claim that his Sixth Amendment right to jury trial was violated because the district judge–rather than a jury–determined the nature of his prior conviction. Mendoza

acknowledges that he raises this issue for the purpose of preserving it for review by the United States Supreme Court. We must deny his claim at this tier of review because this Circuit has squarely held that: (1) *Apprendi v. New Jersey*, 430 U.S. 466 (2000) "does not require the nature or character of prior convictions to be determined by a jury"; and that (2) "the district court's authority to determine the existence of prior convictions [is] broad enough to include determinations regarding the nature of those prior convictions." *United States v. Barnett*, 398 F.3d 516, 524 (6th Cir. 2005).

## III.

We next address Mendoza's claim that his prior conviction was invalid under Tennessee law because the charging papers for this offense do not allege all of the elements of the aggravated assault. However, under *Custis v. United States*, 511 U.S. 485, 496-97 (1994), a defendant may not collaterally attack a prior conviction in federal court unless: (1) there has been a previous ruling that a conviction has been ruled constitutionally invalid; or (2) the conviction has been obtained when counsel has not been available or provided. *See United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995). Since neither of these instances apply, we find no merit to this claim for error.

## IV.

We now address Mendoza's challenge to the district court's application of the penalty provision of the illegal reentry statute, 8 U.S.C. § 1326(b)(2), which Mendoza argues does not apply because his prior aggravated assault conviction was not an "aggravated felony." This is a matter of law for which we accord de novo review. *See United States v. Rojas-Carillo*, 159 F. App'x 630, 633 (6th Cir. 2005) (reviewing de novo whether an offense is an aggravated felony under 8 U.S.C. § 1326(b)).

## A.

The penalty provision, 8 U.S.C. § 1326(b)(2), applies if the alien's "removal was subsequent to a conviction for commission of an *aggravated felony*." 8 U.S.C. § 1326(b)(2) (emphasis added). An "aggravated felony" for purposes of § 1326(b)(2) is defined as "a *crime of violence* (as defined in [18 U.S.C. § 16] . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43) (emphasis added). Section 16 of Title 8 in turn defines a "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

**B.**

In order to determine whether the district court properly applied 8 U.S.C. § 1326(b)(2), we must address whether Mendoza's prior conviction constitutes a "crime of violence" under 18 U.S.C. § 16. In making this determination, we employ a categorical approach, "look[ing] [only] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime." *Patel v. Ashcroft*, 401 F.3d 400, 409 (6th Cir. 2005) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004)). The Tennessee statute for aggravated assault in effect at the time of Mendoza's conviction provides that a person commits aggravated assault who:

> (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
>     (A) Causes serious bodily injury to another; or
>     (B) Uses or displays a deadly weapon; or
> (2) Recklessly commits an assault as defined in § 39-13-101(a)(1) and:
>     (A) Causes serious bodily injury to another; or
>     (B) Uses or displays a deadly weapon.

TENN CODE ANN. § 39-13-102(a) (1999). Under Tennessee law, a person commits assault who:

-4-

(1) Intentionally, knowingly or recklessly causes bodily injury to another;
(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or
(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative . . . .

TENN. CODE ANN. § 39-13-101(a) (1999).

Because the criminal judgment states merely that Mendoza was convicted of aggravated assault generally under TENN. CODE ANN. § 39-13-101, we must go beyond the fact of the conviction and look to the charging papers to determine which version of the aggravated assault statute Mendoza was convicted under. In doing so, we may consider "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 15 (2005). The criminal information, which states that Mendoza acted "recklessly" and committed aggravated assault "by the use or display of a deadly weapon," makes clear that he pleaded guilty to § 39-13-102(a)(2)(B) (requiring recklessness and the use or display of a deadly weapon).

## C.

Thus, the issue becomes whether § 39-13-102(a)(2)(B) meets the definition of 18 U.S.C. § 16. Mendoza argues that § 39-13-102(a)(2)(B) does not meet the § 16 definition because the commission of the offense involved merely a reckless state of mind, and § 16 requires intentional conduct. We first consider the definition of a crime of violence in § 16(b), which "sweeps more broadly than § 16(a)," *Leocal*, 543 U.S. at 10 (2004), and includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property

-5-

of another may be used in the course of committing the offense." 18 U.S.C. § 16(b).[1]

In *Leocal*, the Supreme Court held that a Florida conviction for a DUI did not constitute a § 16(b) "crime of violence" because § 16, including § 16(b), required a higher mens rea than mere negligence. 543 U.S. at 11 ("Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes."). Interpreting § 16(b)'s requirement that "physical force . . . may be used in the course of committing the offense," the Court stated:

> [ Section 16(b)] simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime.

*Id.*, at 10 (footnote omitted). The Florida statute did not meet the § 16(b) definition because a person operating a vehicle while intoxicated does not "risk[] having to 'use' physical force against another person," with "use" requiring a higher mens rea than mere accidental or negligent conduct. *Id.* at 11. However, *Leocal* left open the issue of whether an "offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a "crime of violence" under 18 U.S.C. § 16. *Id.* at 13 (emphasis added).

In *United States v. Portela*, 469 F.3d 496, 499 (6th Cir. 2006), this Circuit addressed this issue unresolved by *Leocal*, and held that "a crime requiring only recklessness does not qualify as a "crime of violence" under 18 U.S.C. § 16." *Id.* We relied on the jurisprudence of the Third and Fourth Circuits in reaching this conclusion. First, in *Oyebanji v. Gonzales*, 418 F.3d 260, 261 (3d

---

[1]Mendoza does not dispute that his aggravated assault conviction is a felony. The aggravated assault statute provides aggravated assault under § 39-13-102(d)(1) is a "Class D felony." § 39-13-102(d)(1).

Cir. 2005), the Third Circuit held that a conviction under the New Jersey vehicular homicide statute, which required a mens rea of recklessness, was not a "crime of violence," because, under *Leocal*, the "accidental" use of force does not satisfy 18 U.S.C. § 16. *Id*. at 263-64. In *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 445 (4th Cir. 2005), the Fourth Circuit held that a drunk driver's conviction for reckless involuntary manslaughter was not a "crime of violence" conviction under 18 U.S.C. § 16 because *Leocal*'s reasoning regarding the "use" of force "strongly indicates that the result in *Leocal* would have been the same even had a violation of the statute there at issue required recklessness rather than mere negligence." *Id*. at 447. Relying on these cases, the *Portela* court held that a conviction for vehicular assault under Tennessee law, *see* TENN. CODE ANN. § 39-13-106(a), was not a "crime of violence" under § 16, because the offense prescribed a mens rea of mere recklessness. *Portela*, 469 F.3d at 499.[2]

*Leocal* and *Portela* do not preclude reckless aggravated assault from meeting the § 16(b) definition, because unlike the statutes construed in those cases, reckless aggravated assault includes an intentional element. The DUI statute at issue in *Leocal* did not "require any mental state with respect to the use of force against another person," and thus only "reach[ed] individuals who were negligent or less." *Leocal*, 543 U.S. at 13. The Tennessee vehicular assault statute at issue in *Portela* required *only* reckless conduct. *See* TENN. CODE ANN. § 39-13-106(a). While reckless aggravated assault has an element of recklessness, namely "recklessly causing bodily injury to another," *see* §§ 39-13-101 and 39-13-102, the offense also contains an *intentional* element–that one

_____

[2]The Tennessee vehicular assault statute provides that "[a] person commits vehicular assault, who, as the proximate result of the person's intoxication . . . recklessly causes serious bodily injury to another person by the operation of a motor vehicle." Tenn. Code Ann. § 39-13-106(a).

-7-

"use[] or display[] a deadly weapon." *See* § 39-13-102(a)(2)(B).

The Second Circuit has recently addressed the issue of whether an assault statute containing elements requiring both intent and recklessness is a § 16(b) "crime of violence" in *Blake v. Gonzales*, 481 F.3d 152 (2d Cir. 2007). In *Blake*, the defendant was convicted of assault and battery on a police officer under Massachusetts law. *See* Mass. Gen. Laws ch. 265, § 13. Under the reckless theory of the offense construed in *Blake*, the Court first defined assault as "the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another." *Blake*, 381 F.3d at 157 (quoting *Commonwealth v. Ford*, 677 N.E.2d 1149, 1151 (Mass. 1997)). The crime of assault and battery on a police officer incorporates two additional requirements: "the officer must be engaged in the performance of his duties at the time and the defendant must know that the victim was an officer engaged in the performance of his duties." *Blake*, 381 F.3d at 159. The Court noted that "under the wanton or reckless theory [of assault and battery statute], the perpetrator intends the *conduct*, and . . . recklessness is the mens rea with respect to the likelihood of physical harm." *Id.* at 162 n.6. The court held that assault and battery on a police officer is a "crime of violence" under § 16(b), reasoning:

> [t]he wanton or reckless theory of assault and battery requires *intentional conduct* that is wanton and reckless, and that results in *demonstrable injury*. Such an action-particularly when oriented towards a police officer acting in the course of his or her duties, and who is likely to make a forceful response-necessarily involves a substantial risk that force may be used by the defendant.

*Id*. at 162.

The aggravated assault offense in the instant case is materially indistinguishable from the assault and battery offense construed in *Blake*. Both include an element which requires *intentional* conduct that is reckless and results in injury to another. *See id.*; TENN. CODE ANN. §§ 39-13-102 and

39-13-101.[3] Inherent in the element defined by § 39-13-102(a)(2)(B), namely the *intentional* "use or display of a deadly weapon," which causes, albeit recklessly,"bodily injury to another," § 39-13-101, is a substantial risk that a person may intentionally use physical force against the person or property of another. *See* 18 U.S.C. § 16(b). Even if one commits aggravated assault against a person other than a police officer, such action would likely invite a "a forceful response–necessarily involv[ing] a substantial risk that force may be used by the defendant." *Blake*, 381 F.3d at 162. The fact that one must use or display a deadly weapon during the course of committing the aggravated assault lends further credence to this conclusion. Because the commission of reckless aggravated assault involves "a substantial likelihood that the perpetrator will intentionally employ physical force, it is a crime of violence under § 16(b)." *Patel*, 401 F.3d at 409 (quoting *Dalton v. Ashcroft*, 257 F.3d 200, 208 (2d Cir. 2001)) (internal quotations omitted).

And "[b]ecause we conclude that [§ 39-13-102(a)(2)(B)] satisfies the requirements of § 16(b), we do not consider whether it also satisfies § 16(a)." *Patel*, 401 F.3d at 408 n.11.

**V.**

Next, we consider whether Mendoza's prior Tennessee aggravated assault conviction qualifies Mendoza for the sixteen-level sentencing enhancement under U.S.S.G. § 2L1.2, which applies if a defendant was deported following a conviction for a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). We review de novo the legal conclusion that a prior offense constitutes a "crime of violence" for the purposes of U.S.S.G. § 2L1.2. *United States v. Garcia-Serrano*, 107 F. App'x 495, 496 (6th Cir. 2004).

---

[3] Section 39-13-101 requires that the perpetrator cause "bodily injury" while assault and battery on a police officer under Massachusetts law requires "demonstrable injury." Compare Mass. Gen. Laws ch. 265, § 13 with TENN. CODE ANN. § 39-13-101.

The Commentary to the Guidelines provides:

"Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii). The catch-all clause to this commentary–providing that a "crime of violence" includes "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii)–employs language that is identical to 18 U.S.C. § 16(a), but not § 16(b). *See United States v. Perez-Vargas*, 414 F.3d 1282, 1287 n.3 (10th Cir. 2005). Thus, our holding that § 39-13-102(a)(2)(B) is a "crime of violence" under § 16(b) is not, by itself, determinative of whether § 39-13-102(a)(2)(B) is also a U.S.S.G. § 2L1.2(b)(1)(ii) "crime of violence."

However, "aggravated assault" is listed as an enumerated "crime of violence." *See* U.S.S.G. § 2L1.2(b)(1) cmt. n.1(B)(iii). In *United States v. Mungia-Portillo*, 484 F.3d 813, 817 (5th Cir. 2007), the Fifth Circuit held that the statute construed in the instant case–the reckless version of aggravated assault under Tennessee law–is an enumerated "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii). In order to reach this result, the *Mungia-Portillo* court compared "reckless aggravated assault" under Tennessee law to the definitions of aggravated assault in the Model Penal Code, Wayne F. LaFave's Substantive Criminal Law treatise, and Black's Law Dictionary, and found that it was "within the ordinary, contemporary, and common meaning of aggravated assault," and thus an enumerated "crime of violence." *Id.* at 816-17. Adopting the reasoning of *Mungia-Portillo*, we now hold that Mendoza's aggravated assault conviction qualifies as an enumerated "crime of

violence" for purposes of 2L1.2(b)(1)(A)(ii).

## VI.

For the foregoing reasons, we **AFFIRM** Mendoza's conviction and sentence.