NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0562n.06

Case No. 10-5956

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 31, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,  )
                           )
    Plaintiff-Appellee,    )
                           )       ON APPEAL FROM THE
    v.                     )       UNITED STATES DISTRICT
                           )       COURT FOR THE MIDDLE
EFRAIN MARTINEZ-ORTEGA,    )       DISTRICT OF TENNESSEE
                           )
    Defendant-Appellant.   )
                           )
_____    )

BEFORE: BATCHELDER, Chief Circuit Judge; COLE and COOK, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.** A federal jury convicted Efrain Martinez-Ortega of illegal reentry by a deported alien following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2), and the court sentenced him to 46 months of imprisonment. Martinez-Ortega claims that the district court erred when it applied certain enhancements in the calculation of his sentence. For the reasons that follow, we find that Martinez-Ortega's challenges to his sentence have merit and, therefore, we vacate his sentence and remand the case to the district court for complete resentencing.

I.

Martinez-Ortega is a Mexican national. In May of 2005, he pleaded guilty in a Tennessee court to aggravated assault, in violation of Tenn. Code Ann. § 39-13-102, and received a sentence

1

of three years of probation. On September 19, 2006, an Immigration Judge ordered Martinez-Ortega removed from the United States.

Martinez-Ortega later returned to the United States without permission. On September 23, 2009, a federal grand jury indicted him on one count of illegal reentry by a deported alien following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). He pleaded guilty to the indictment.

At sentencing, the district court concluded that Martinez-Ortega's prior Tennessee conviction for aggravated assault constituted a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii) and added sixteen levels to his base-offense level. The court also determined that the Tennessee conviction was an "aggravated felony" under 8 U.S.C. § 1326(b)(2) and set the statutory maximum sentence at twenty years. Based on a Guidelines range of 46 to 57 months, the court sentenced Martinez-Ortega to 46 months of imprisonment.

## II.

Martinez-Ortega first claims that the court's application of U.S.S.G. § 2L1.2's sixteen-level enhancement was improper because his Tennessee conviction does not constitute a "crime of violence." Under U.S.S.G. § 2L1.2, the sentencing court may apply a sixteen-level enhancement to a defendant's base-offense level for illegal reentry if the government establishes that the defendant's prior conviction was a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2009);[1] *United States v.*

---

[1]This enhancement reads:

If the defendant previously was deported, or unlawfully remained in the United States, after—
    (A) a conviction for a felony that is . . . (ii) a crime of violence . . . increase by 16 levels[.]

*Bernal-Aveja*, 414 F.3d 625, 626–27 (6th Cir. 2005) ("The government bears the burden of proving that [the defendant] was previously convicted of a crime of violence . . . ."). We review *de novo* the legal conclusion that a prior conviction constitutes a "crime of violence" for the purposes of U.S.S.G. § 2L1.2. *United States v. Mendoza-Mendoza*, 239 F. App'x 216, 222 (6th Cir. 2007).

The application notes to § 2L1.2 define a "crime of violence" by enumerating several offenses, one of which is aggravated assault. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). The notes further provide that a non-enumerated offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.*; *see also Mendoza-Mendoza*, 239 F. App'x at 222 (referring to this as the "catch-all clause"). To determine whether a prior conviction qualifies as an enumerated offense or, instead, fits within the catch-all clause of § 2L1.2, a sentencing court must use a two-part, categorical approach in analyzing the conviction. First, the court must look to the statute of conviction and determine whether the language of the statute alone indicates that the defendant was convicted of a crime of violence. *United States v. Armstead*, 467 F.3d 943, 947–48 (6th Cir. 2006). If the language of the statute includes both violent and non-violent crimes, then the court may look to the indictment, plea agreement, plea colloquy, or some other "comparable judicial record" from the prior conviction to determine whether the defendant's conduct was within the violent-crime aspect of the statute. *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)); *see also United States v. Gibbs*, 626 F.3d

---

U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2009). As one jurist recently noted, "This has to be a sentence only a grammar teacher could love. We have here our old nemesis the passive voice, followed by a scraggly expression of time ('previously . . . after'), then a train of prepositional phrases linked one after another and themselves rudely interrupted by a pair of parenthetical punctuations." *United States v. Rosales-Garcia*, 667 F.3d 1348, 1356 (10th Cir. 2012) (Gorsuch, J., dissenting).

344, 352 (6th Cir. 2010). The district court did not conduct this analysis in its calculation of Martinez-Ortega's sentence. Instead, the court applied the enhancement simply because aggravated assault is listed in the application notes. Therefore, we will apply the categorical approach and determine whether the court's application of the enhancement was nevertheless proper. *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) ("[W]e may affirm on any grounds supported by the record, even [if those grounds are] different from the grounds relied on by the district court." (internal quotation marks and citation omitted)).

To establish that Martinez-Ortega's prior conviction was a crime of violence, the government presented the state court judgment of Martinez-Ortega's conviction, which indicates that he pleaded guilty to and was convicted of aggravated assault under Tenn. Code Ann. § 39-13-102. Although this statute has four subsections, the judgment does not indicate which subsection Martinez-Ortega admitted to violating. Therefore, we must determine "[i]f it is possible to violate the statute in a way that would constitute a crime of violence and in a way that would not." *Gibbs*, 626 F.3d at 352. When the prior conviction is enumerated in the Guidelines's section, as aggravated assault is in § 2L1.2, we compare the statute's definition of the offense to a generic definition, such as that in the Model Penal Code. *See United States v. McMurray*, 653 F.3d 367, 373 n.4 (6th Cir. 2011); *Mendoza-Mendoza*, 239 F. App'x at 222 (adopting the reasoning of *United States v. Mungia-Portillo*, 484 F.3d 813, 816–17 (5th Cir. 2007) ("When the statute of conviction encompasses prohibited behavior that is not within the plain, ordinary meaning of the enumerated offense, the conviction is not a crime of violence as a matter of law." (internal quotation marks omitted))).

At the time of Martinez-Ortega's conviction, Tennessee's Aggravated Assault statute provided, in relevant part:

> (a) A person commits aggravated assault who:
>     (1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:
>             (A) Causes serious bodily injury to another; or
>             (B) Uses or displays a deadly weapon; or
>     (2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
>             (A) Causes serious bodily injury to another; or
>             (B) Uses or displays a deadly weapon.
>
> (b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect such child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.
>
> (c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against such individual or individuals.

Tenn. Code. Ann. § 39-13-102 (2002).

The Model Penal Code defines aggravated assault as occurring when a person "'(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.'" *United States v. McFalls*, 592 F.3d 707, 717 (6th Cir. 2010) (quoting Model Penal Code § 211.1(2)).

A comparison of these two definitions shows that the Tennessee statute "encompasses prohibited behavior that is not within the plain, ordinary meaning" of aggravated assault. *See*

5

*Mungia-Portillo*, 484 F.3d at 816. Specifically, the Model Penal Code definition requires, at the very least, an attempt to cause bodily injury, while the Tennessee statute does not. The important distinction lies in subsection (c) of section 39-13-102, which provides that a defendant can be convicted of an aggravated felony by committing a simple assault while under a restraining order. Simple assault in Tennessee includes "[i]ntentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3) (2002). Nothing in the record indicates that Martinez-Ortega's aggravated assault conviction was for committing extremely offensive physical contact while under a restraining order. Nevertheless, because the government presented only the state court judgment without any additional evidence that could indicate what section of the aggravated assault statute that Martinez-Ortega violated, we must consider subsection (c). *See McMurray*, 653 F.3d at 373 (looking at the entire statute where the record does not indicate a narrowed charge). Because someone can be convicted of aggravated assault under section 39-13-102 without attempting to cause bodily injury, the statute encompasses behavior that is not within the plain ordinary meaning of aggravated assault and, therefore, does not qualify as an enumerated offense under U.S.S.G. § 2L1.2.

Although Martinez-Ortega's prior conviction is not a crime of violence as an enumerated offense under § 2L1.2, it may nevertheless qualify as a crime of violence if it falls under the catch-all clause, which requires that the statute contain the "use, attempted use, or threatened use of physical force" as an element. *See United States v. Portela*, 469 F.3d 496, 498 (6th Cir. 2006). We must "look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the defendant's] crime." *Leocal v. Ashcroft*, 543 U.S. 1, 7 (2004). Because the

government presented only the state court judgment, which does not indicate that Martinez-Ortega was convicted under one of the subsections that requires the use of force as an element, we cannot conclude that the use of force was a necessary element of his conviction.

Proceeding to the second step of the categorical analysis, we may consider additional documents to determine if the nature of the conviction included bodily harm or force such that we can conclude that Martinez-Ortega's conviction was for a violation of subsection (a) or (b) of section 39-13-102. *See Mendoza-Mendoza*, 239 F. App'x at 219 (concluding that because the criminal information stated that the defendant acted "recklessly," the defendant must have pleaded guilty to the recklessness subsection of the statute). Again, the government did not present any documents other than the state judgment; and although we may consider judgments as part of the categorical approach, *Armstead*, 467 F.3d at 948, the judgment here does not provide any further information from which we can determine the nature of the conviction. Without additional documentation establishing that Martinez-Ortega was convicted under one of the subsections that specifically addresses violent conduct, the government failed to meet its burden of establishing that his prior conviction constituted a crime of violence.

The government argues that we are not required to consider subsection (c) of the Tennessee statute because the state court judgment implies that Martinez-Ortega's conviction was either under subsection (a) or (b). Specifically, the government argues that we can make this inference because the judgment indicates that Martinez-Ortega was originally indicted for attempted rape, and, therefore, aggravated assault must have been a lesser-included offense. The government's argument, however, ignores the basic principle of the categorical approach—we may not consider the

underlying facts of the conviction that the defendant has not admitted. *See Leocal*, 543 U.S. at 7; *United States v. Louchart*, — F.3d —, 2012 U.S. App. LEXIS 10619, at *6 (6th Cir. 2012) ("Admission of facts from a guilty plea is limited to elements of the crime charged or those explicitly admitted to by the defendant."). The government presented only one document, and although it indicates that Martinez-Ortega was indicted for attempted rape, it is impossible to discern which facts Martinez-Ortega necessarily admitted when he pleaded guilty, not to attempted rape, but to aggravated assault. *See Shepard*, 544 U.S. at 25–26. The categorical approach is meant "to avoid 'the practical difficulties and potential unfairness' of permitting a sentencing court to relitigate the facts and delve into the details of a prior conviction." *Armstead*, 467 F.3d at 949 (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990)). Consideration of the attempted rape charge would not only present practical difficulties, because the judgment does not even state a statutory section whose language we could analyze, but it would also be decidedly unfair to the defendant, who may not have admitted to any violent conduct in his plea.

Without further evidence that Martinez-Ortega admitted to intending to commit bodily injury or the attempted use of force, the district court could not find that his prior conviction was for a crime of violence. *See also Armstead*, 467 F.3d at 949 ("[W]here a defendant did not plead guilty to, and therefore was not actually convicted of, the . . . charge contained in the indictment, the indictment alone is insufficient to meet the government's burden of proving that he was previously convicted of a 'crime of violence.'" (internal alterations and quotation marks omitted)). Accordingly, we may not consider any inference that may arise from the name of the charge in

Martinez-Ortega's indictment.[2]   Because we cannot know what conduct from the indictment Martinez-Ortega admitted "until and unless we are presented with additional evidence in a form approved of by the Supreme Court[,]" we cannot conclude that his conviction under Tennessee's general aggravated assault statute qualifies as a "crime of violence" for the purposes of enhancing his sentence. *See id.*, 467 F.3d at 950.

Martinez-Ortega also challenges the district court's ruling that his prior conviction is an "aggravated felony" under 8 U.S.C. § 1326(b)(2), which increased the statutory maximum for the offense to twenty years.  This enhancement defines an "aggravated felony" as a "crime of violence [as defined in 18 U.S.C. § 16] for which the term of imprisonment [is] at least one year."  8 U.S.C. § 1101(a)(43)(F).  The government bears the burden of proving by a preponderance of the evidence that this enhancement applies.  *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).  To determine whether a district court properly applied § 1326(b)(2), we again employ the categorical approach.  *Mendoza-Mendoza*, 239 F. App'x at 218–19.  We decline to review this claim because the district court's error regarding U.S.S.G. § 2L1.2's sixteen-level enhancement is sufficient to require remand for resentencing,[3] but we note that the government's presentation of the judgment alone appears deficient in this context, as well.  The government cannot meet its burden of proving

---

[2]Likewise, we cannot consider the underlying facts of the charges that are outlined in the presentence report. *See United States v. Bartee*, 529 F.3d 357, 361 (6th Cir. 2008).  Presentence reports are not *Shepard*-approved documents, and the facts included in them regarding the prior conviction should not be considered under the categorical approach.

[3]We also decline to review Martinez-Ortega's similar argument regarding the applicability of U.S.S.G. § 2L1.2's eight-level enhancement, which is based on the same language that is used in § 1326's aggravated-felony analysis.  The district court neither applied nor considered the enhancement, and, therefore, we will not address the hypothetical question of its applicability.

by a preponderance of the evidence that Martinez-Ortega's prior conviction was an aggravated felony simply on the basis of a state court judgment that is unclear as to the charge of conviction as well as the term of imprisonment.

## III.

For the foregoing reasons, we **VACATE** Martinez-Ortega's sentence, and **REMAND** the case for complete resentencing.