NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0187n.06

No. 17-5716

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 12, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DENNIS DILLARD, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| UNITED STATES OF AMERICA, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, KETHLEDGE, and WHITE, Circuit Judges.

WHITE, Circuit Judge.

Petitioner Dennis Dillard was convicted of being a felon in possession of a firearm and was sentenced under the Armed Career Criminal Act (ACCA) based, in part, on two prior Tennessee convictions for aggravated assault. Relying on a prior decision of this court that has since been overruled, the district court granted Dillard's second or successive motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The district court found that Dillard had been improperly sentenced as a career offender because his Tennessee convictions could have been supported by merely reckless conduct, and therefore could have qualified as ACCA predicates only under the residual clause, which the Supreme Court has found to be unconstitutional. The government now appeals. Because we have held that recklessness is sufficient under the ACCA's use-of-physical-force—or "elements"—clause, we vacate the district court's order and remand for further proceedings.

## I. Background

On June 17, 2005, Dillard pleaded guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). The Probation Office prepared a Presentence Investigation Report (PSR) recommending that the court sentence Dillard as an armed career criminal. That recommendation was predicated on four prior Tennessee convictions: a 1984 conviction for aggravated assault, a 1987 conviction for aggravated assault, a 1989 conviction for burglary of a business house, and a 1992 conviction for voluntary manslaughter.

Dillard argued that one of his aggravated-assault convictions should not count as a predicate offense because "he was not the initial aggressor" in the incident. (R. 51, PID 859.) The district court rejected that argument, stating that "[s]elf-defense would be a defense to the charge" and, "if that defense had been accepted, then the defendant could not have been convicted of the offense." (*Id.* at PID 862.) The court then found that both of Dillard's aggravated-assault convictions qualified as crimes of violence, but did not specify the clause of the ACCA under which they qualified. Based on Dillard's ACCA designation, the district court sentenced him to 215 months of imprisonment. Dillard appealed, but the Sixth Circuit affirmed his sentence and conviction on December 5, 2006.

### A. Dillard's Prior Convictions

#### 1. 1984 Conviction

Dillard was indicted for "Felonious Assault" in 1983. Without any reference to a particular statute, the indictment alleges as follows:

> That Dennis James Dillard . . . did unlawfully, feloniously, willfully, deliberately, premeditatedly, maliciously and with malice aforethought assault Marty Jones, with a certain dangerous and deadly weapon, to-wit: a knife, with intent at the time to unlawfully, feloniously, willfully, deliberately, premeditatedly, maliciously and with malice aforethought kill and murder the said Marty Jones.

(R. 104, PID 215.)

Seven separate felony assault offenses existed under Tennessee law in 1983, none of which was titled "Felonious Assault." *See* Tenn. Code Ann. §§ 39-2-101 (Aggravated Assault), 39-2-102 (Assault with Intent to Commit Felony), 39-2-103 (Assault with Intent to Murder), 39-2-104 (Assault with Intent to Rob), 39-2-107 (Assault from Ambush), 39-2-109 (Assault with Deadly Weapon While in Disguise), 39-2-110 (Assault by Juvenile Confined in Institution) (Michie 1982). The allegations in Dillard's indictment use language similar to the statutory definitions of Aggravated Assault (§ 39-2-101), Assault with Intent to Commit Felony (§ 39-2-102), and Assault with Intent to Murder (§ 39-2-103).

Dillard was convicted on February 6, 1984. The judgment of conviction noted that Dillard had been indicted for "Fel. Assault" but was convicted of "Aggravated Assault" based on a plea. At the relevant time, the aggravated-assault statute provided that any person who

> (1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> (2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;
>
> (3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession; or
>
> (4) Being the parent or custodian of a child or the custodian of an adult, willfully or knowingly fails or refuses to protect such child or adult from an aggravated assault described in (1), (2), or (3) above;

is guilty of the crime of aggravated assault. Tenn. Code Ann. § 39-2-101(b) (Michie 1982).

Dillard's judgment of conviction did not specify the sub-part of the aggravated-assault statute under which he was convicted. At the time, aggravated assault was explicitly defined as a lesser included offense of both assault with intent to kill and assault with intent to commit any other felony. Tenn. Code. Ann. § 39-2-106 (Michie 1982).

Dillard was sentenced to a two-year term of imprisonment.

## 2. 1987 Conviction

Dillard was indicted for "Felonious Assault Causing Personal Injury" in 1986; again, the indictment did not refer to any statutory code section. (R. 104, PID 217.) The indictment contained language that is largely identical to Dillard's first indictment, with additional allegations that the victim had been injured:

> That Dennis James Dillard . . . did unlawfully, feloniously, willfully, deliberately, premeditatedly, maliciously and with malice aforethought assault Naomi Dillard, with a certain dangerous and deadly weapon, to-wit: a knife, with intent at the time to unlawfully, willfully, deliberately, premeditatedly, maliciously and with malice aforethought kill and murder the said Naomi Dillard, and personal injury to Naomi Dillard occurred as a result of such assault as aforesaid, against the peace and dignity of the State.

(*Id.* at PID 218.) As with the earlier conviction, these allegations share language with a number of distinct offenses under Tennessee statutory law. Dillard was convicted on February 10, 1987. The judgment of conviction noted that Dillard had been charged with "Fel. Assault Causing Personal Injury" but was convicted of "Aggravated Assault" based on a plea. (*Id.* at PID 219.) The judgment did not specify a sub-part of the aggravated-assault statute.

At the time of Dillard's 1987 conviction, aggravated assault was still defined as a lesser included offense of assault with intent to commit a felony and assault with intent to murder. *See* § Tenn. Code Ann. 39-2-106; *see also State v. Cash*, 1992 WL 13905, *11 (Tenn. App. 1992) (unpublished). The aggravated-assault statute itself, however, had been expanded to add a fifth subdivision under which a person could be convicted of aggravated assault if that person:

> (5) After having been enjoined, restrained, or otherwise prohibited by a diversion order, condition of probation or other court order from initiating contact with a person, is twice convicted of committing battery on such person; provided, however, the battery described in this subdivision shall not constitute aggravated battery unless the defendant had actual knowledge that he or she was prohibited by an injunction, court order or condition of probation from initiating contact with the victim of the battery.

Tenn. Code Ann. § 39-2-101 (Michie 1986).

Dillard was sentenced to a two-year term of imprisonment.

**B.  Dillard's § 2255 Petitions**

On March 30, 2007, Dillard filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Dillard argued that his counsel had been ineffective both by requesting to withdraw as his appellate counsel and by failing to challenge certain aspects of his sentence.  The district court denied Dillard's § 2255 petition on April 30, 2008.

On June 26, 2015, the Supreme Court held in *Johnson v. United States* that the ACCA's residual clause is unconstitutionally vague.  135 S. Ct. 2551 (2015).  Dillard requested leave to file a successive § 2255 petition based on *Johnson*, and we granted leave, noting that *Johnson* had "announced a new 'substantive rule that has retroactive effect in cases on collateral review.'"  (R. 107, PID 420 (quoting *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016)).)

The district court granted Dillard's petition, stating that "the sole dispute between the parties is whether or not [Dillard's] 1984 and 1987 aggravated-assault convictions remain 'violent felonies' under one of the unaffected provisions of" the ACCA.  (R. 114, PID 673.)  The district court noted that aggravated assault is not an enumerated offense under the ACCA and, as a result, "its status as a predicate depends on the use-of-physical-force clause."  (*Id.*)  The district court concluded that the aggravated assault statute was "divisible between subdivisions (1), (2), (3), (4), and (5) because each of those variants is listed in the disjunctive and juries must agree on which aggravating circumstance applies."  (*Id.* at PID 675.)  The court also concluded that the "statute is not further divisible with regard to the levels of *mens rea*—intentional, knowing, or reckless— contained within the subdivisions."  (*Id.*)  Relying on the allegations in Dillard's indictments, the district court found that Dillard "must have been convicted of violating subdivision (b)(1), (b)(2),

or (b)(3)," but could not determine the precise subdivision under which Dillard had been convicted. (*Id.* at PID 676.)

Because subdivision (1) of the aggravated assault statute can be violated by reckless conduct, the district court turned to the question whether recklessness satisfies the ACCA's use-of-physical-force clause. The district court first discussed *United States v. McMurray*, in which we concluded that the ACCA's use-of-physical-force clause "requires more than reckless conduct." 653 F.3d 367, 374–75 (6th Cir. 2011). The district court next considered whether the Supreme Court's subsequent decision in *Voisine v. United States* had effectively overruled *McMurray*. *See* 136 S. Ct. 2272 (2016). Because it was "not powerfully convinced that the Sixth Circuit would conclude at the next available opportunity that *Voisine* overruled *McMurray*," the district court concluded that it was "bound to follow *McMurray* until the Sixth Circuit sees fit to review its case law." (R. 114, PID 688.) The court thus found that Dillard's convictions for aggravated assault could not serve as ACCA predicates, granted Dillard's petition, and reduced his sentence to a term of time served.

### C. Subsequent Legal Developments

Since the district court's decision, we have explicitly held that *Voisine* overrules *McMurray*. We briefly summarize the relevant cases.

#### 1. *United States v. McMurray*

The defendant in *McMurray* was convicted at a bench trial of being a felon in possession of a firearm and sentenced to a 15-year term of imprisonment under the ACCA. 653 F.3d 367, 369 (6th Cir. 2011). He appealed, arguing that the district court erred in finding that his prior convictions under Tennessee's aggravated-assault statute—a later version of the statute at issue in the instant case—were categorically "violent felonies" because that statute criminalized reckless

conduct. *Id.* at 370-71. The *McMurray* court found that mere recklessness was insufficient to satisfy the ACCA's use-of-physical-force requirement.[1] *Id.* at 375-76. *McMurray* relied primarily on the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), and our decision in *United States v. Portela*, 469 F.3d 496 (6th Cir. 2006).

In *Leocal*, the Supreme Court considered whether a Florida conviction for causing serious bodily injury while driving under the influence constituted an "aggravated felony" under the Immigration and Nationality Act. *See* 543 U.S. at 3. That question turned on whether the crime of conviction was a "crime of violence" as defined by 18 U.S.C. § 16.[2] The *Leocal* court concluded that, because "'use' requires active employment," § 16's language "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Id.* at 9. The Court noted that, "[w]hile one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident." *Id.* Because the Florida statute at issue could be violated by accidental conduct, the Court concluded that the conviction was not a crime of violence under § 16. *Id.* at 10.

In *Portela*, we considered a Tennessee vehicular assault statute under which a "person commits vehicular assault who, as the proximate result of the person's intoxication . . . recklessly causes serious bodily injury to another person by the operation of a motor vehicle." Tenn. Code Ann. § 39–13–106(a). Extending *Leocal*'s reasoning to recklessness and relying on prior decisions by the Third and Fourth Circuits holding that recklessness is insufficient, the *Portela* court

---

[1] The *McMurray* court also discussed both the ACCA's residual clause and, while examining prior precedent, the residual clause of 18 U.S.C. § 16. Because the Supreme Court has since found both of those clauses to be unconstitutional, *see Johnson*, 135 S. Ct. at 2563; *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), we summarize only the portions of *McMurray* relevant to the ACCA's use-of-physical-force clause.

[2] 18 U.S.C. § 16 defines a "crime of violence" as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

concluded that Tennessee vehicular assault did not qualify as a crime of violence because it encompassed recklessness. *Portela*, 469 F.3d at 499 (citing *Oyebanji v. Gonzales*, 418 F.3d 260, 261 (3d Cir. 2005); *Bejarano-Urrutia v. Gonzales*, 413 F.3d 444, 445 (4th Cir. 2005)).

The *McMurray* court thus concluded that "the 'use of physical force' clause of the ACCA . . . requires more than reckless conduct." *McMurray*, 653 F.3d at 375.

### 2. *Voisine v. United States*

In *Voisine*, the Supreme Court considered 18 U.S.C. § 922(g)(9), which prohibits possession of firearms by persons convicted of a "misdemeanor crime of domestic violence," defined to include a misdemeanor under federal, state, or tribal law committed against a domestic relation that involved the "use . . . of physical force." *Voisine*, 136 S. Ct. at 2276 (quoting 18 U.S.C. § 921(a)(33)(A)). *Voisine* concerned two defendants who, after being involved in domestic disputes, had been convicted under two separate Maine laws making it a misdemeanor to "intentionally, knowingly or recklessly cause[] bodily injury." *Id.* at 2277 (alteration in original). Both defendants were later convicted of possessing a firearm in violation of § 922(g)(9). *Id.* On appeal, the defendants argued that a prior conviction predicated on recklessness is insufficient to trigger the application of § 922(g)(9). *Id.* The Court rejected their argument and held that a reckless domestic assault qualifies as a "misdemeanor crime of domestic violence." *Id.* at 2282.

The Court observed that "[n]othing in the word 'use' . . . indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." *Id.* at 2278. The Court also noted that *Leocal*'s holding applied only to "merely accidental" conduct and was therefore distinguishable. *Id.* at 2279. Finally, the Court discussed the history of § 922(g)(9), noting that the majority of jurisdictions have enacted misdemeanor domestic violence statutes that apply to reckless conduct,

and that if § 922(g)(9) were held not to apply to reckless conduct, Congress's intent would be thwarted because § 922(g)(9) would not apply to persons convicted of misdemeanor domestic assaults in the majority of jurisdictions. *Id.* 2280–82. The Court thus concluded that § 922(g)(9) applies to convictions for crimes involving the reckless use of force against a domestic relation.

### 3. *United States v. Verwiebe*

The defendant in *United States v. Verwiebe,* 874 F.3d 258, 261 (6th Cir. 2018) pleaded guilty to assaulting, resisting, or impeding a federal officer with a dangerous weapon and was classified as a career offender under the Guidelines based on a prior conviction for assault resulting in serious bodily injury under 18 U.S.C. § 113(a)(6). Verwiebe argued "that § 113(a)(6) does not qualify as a crime of violence because a mental state of recklessness suffices for conviction." *Id.* at 262. The *Verwiebe* court noted that although *Voisine* "left undecided whether its statutory interpretation should extend to other contexts, *Voisine*'s analysis applies with equal force to the Guidelines, which define crimes of violence nearly identically to § 921(a)(33)(A)(ii): any felony that 'has as an element the use, attempted use, or threatened use of physical force.'" *Id.* at 262 (quoting U.S.S.G. § 4B1.2(a)). The *Verwiebe* court noted that "the Fifth, Eighth, and Tenth Circuits have held that *Voisine* confirms that recklessness suffices under the elements clause of the Armed Career Criminal Act and the Guidelines," but recognized that the First Circuit "has come out the other way." *Id.* (collecting cases). The court concluded that "the argument that crimes satisfied by reckless conduct categorically do not include the 'use of physical force' simply does not hold water after *Voisine*." *Id.* at 264.

### 4. *United States v. Harper*

In *Harper*, we held that a Tennessee conviction for reckless aggravated assault was a crime of violence for purposes of the "career offender" enhancement under the Sentencing Guidelines.

*See United States v. Harper*, 875 F.3d 329, 330 (6th Cir. 2017). The *Harper* court noted that *Verwiebe* compelled this outcome because there was "no basis to distinguish the reckless-assault offense" in that case from a reckless aggravated-assault conviction under Tennessee law.[3] *Id.*

## II. Discussion

In reviewing a district court's decision on a § 2255 motion, "we apply a clearly erroneous standard to its factual findings and review its conclusions of law de novo." *Braden v. United States*, 817 F.3d 926, 929 (6th Cir. 2016) (quoting *Hyatt v. United States*, 207 F.3d 831, 832 (6th Cir. 2000)). We review "de novo a district court's determination regarding whether a prior conviction constitutes a 'violent felony' under the ACCA." *Id.* at 930 (quoting *United States v. Kemmerling*, 612 F. App'x 373, 375 (6th Cir. 2015) (italicization omitted)).

### A. The Armed Career Criminal Act

The ACCA provides that anyone who violates 18 U.S.C. § 922(g) "and has three previous convictions . . . for a violent felony . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force" or "elements" clause); (2) "is burglary, arson, or extortion, [or] involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential

---

[3] The *Harper* panel noted its disagreement with *Verwiebe*, focusing on the fact that the Guidelines and ACCA define "crime of violence" as any offense that "requires 'the use of . . . physical force *against the person of another*[.]" *Id.* at 331 (alterations in original) (quoting U.S.S.G. § 4B1.2(a)). Because this "against the person of another" requirement is absent from the statute at issue in *Voisine*, the *Harper* panel opined that *Voisine* was distinguishable. *Id.* at 331. The Supreme Court denied Harper's petition for a writ of certiorari on October 1, 2018. *Harper v. United States*, No. 17-7613, 2018 WL 692579 (U.S. Oct. 1, 2018).

risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). In *Johnson*,[4] the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process." 135 S. Ct. at 2563. And, because aggravated assault is not an enumerated offense, Dillard's convictions can only be ACCA predicates if they satisfy the use-of-physical-force clause.

## B. Recklessness Is Sufficient Under the ACCA

The district court examined Dillard's indictments and judgments and concluded that Dillard had been convicted under subdivision (1), (2), or (3) of the aggravated-assault statute. Concluding that it was "bound to follow *McMurray* until the Sixth Circuit sees fit to review its case law," (R. 114, PID 668), the district court reasoned that, because a conviction under subdivision (1) of the aggravated-assault statute can be premised on reckless conduct, Dillard's aggravated-assault convictions were not categorically crimes of violence, and Dillard thus did not qualify as an armed career criminal.

However, *Verwiebe* has since overruled *McMurray*, squarely undermining the district court's reasoning. *See Verwiebe*, 874 F.3d at 264. We therefore vacate the district court's order and remand for further proceedings.

## C. We Do Not Consider the Parties' Arguments Concerning Dillard's Burden of Proof

The bulk of the parties' arguments on appeal do not concern the issue that was before the district court. Instead, the parties dispute whether Dillard's indictments can be considered in determining the subdivision of the aggravated-assault statute under which Dillard was convicted, and whether Dillard has demonstrated an entitlement to relief under § 2255. Dillard argues that

---

[4] And, in *Dimaya*, the Supreme Court applied *Johnson* and concluded that the residual clause in 18 U.S.C. § 16(b) as incorporated into the Immigration and Nationality Act's definition of "aggravated felon" is unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1215 (2018).

the court cannot consider the factual allegations in his indictments because he pleaded to offenses that were not charged in the indictments. In response, the government argues both that the district court may consider evidentiary allegations, and that Dillard has not demonstrated that he was sentenced under the residual clause that *Johnson* invalidated.

The government now invites us to find that Dillard has failed to meet his burden because after *Verwiebe* he must show that he might have been convicted under subdivisions (4) or (5), which do not qualify under the elements clause. But Dillard had no reason to argue before the district court that he might have been convicted under subdivisions (4) or (5) of Tennessee's aggravated-assault statute because, prior to *Verwiebe*, he needed only to demonstrate that he might have been convicted under subdivision (1), which encompassed recklessness. Because Dillard had no incentive to develop the necessary record before the district court, we decline the government's invitation to rule on this basis. And, to the extent that the government relies on our recent holding that a *Johnson* petitioner must demonstrate "that the district court relied only on the residual clause in sentencing him" under the ACCA, we leave that issue for the district court's consideration in the first instance. *See Potter v. United States*, 887 F.3d 785, 787 (6th Cir. 2018); *but see Raines v. United States*, 898 F.3d 680, 693 (6th Cir. 2018) (Cole, C.J, concurring) ("[W]e should not require a second-or-successive habeas petitioner to show that a sentence was based only on the residual clause.").

The parties dispute whether the original indictment may be considered as a *Shepard* document under the modified categorical approach where a defendant pleads to an offense other than the one charged in the indictment and no other *Shepard* documents indicate the crime of conviction. The government argues that an original indictment is a proper *Shepard* document because "due process protections in both the United States Constitution and Tennessee

Constitution[] only permit a defendant to be convicted of 'a crime which is raised by the indictment or which is a lesser-included offense thereof.'" (Reply at 10 n.6 (quoting *Rush*, 50 S.W.3d at 427).) But the government's argument disregards Tennessee Rule of Criminal Procedure 11(e)(1), which allows the prosecutor and defendant to agree that the defendant will plead guilty "to a charged offense or a lesser *or related* offense."[5] (Emphasis added). A prosecutor and defendant are thus able to negotiate the terms of the defendant's conviction, and there is no requirement that the defendant be convicted of a crime that is strictly a lesser-included offense of a charged crime. Because there is no requirement that a defendant who enters a plea agreement be convicted only of a lesser-included offense, the indictment itself does not necessarily shed any light on the actual crime of conviction.

We therefore agree with Dillard that, because he pleaded guilty to crimes not charged in the indictments and no other *Shepard* documents indicate the crime of conviction, his indictments cannot be considered as *Shepard* documents under the modified categorical approach. We are not alone in reaching this conclusion. *See United States v. Benton*, 639 F.3d 723, 730–31 (6th Cir. 2011) (finding that a sentencing court could not, "in determining whether a conviction was for a 'violent felony,' favor the originally charged offense over the offense to which Benton eventually pleaded"); *United States v. Bernal-Aveja*, 414 F.3d 625, 628 (6th Cir. 2005) (disallowing reliance on an indictment under the modified categorical approach "because Bernal-Aveja did not plead guilty to, and therefore was not actually convicted of, the aggravated burglary charge contained in the indictment"); *United States v. Turner*, 349 F.3d 833, 836 (5th Cir. 2003) ("a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted") (quoting *United States v. Spell*, 44 F.3d 936, 940

---

[5] Although there are slight differences between the version of Tennessee Rule of Criminal Procedure 11(e) in effect at the time of Dillard's earlier conviction and the present version, the relevant language has remained the same.

(11th Cir. 1995)); *United States v. Martinez-Ortega*, 482 F. App'x 96, 101 (6th Cir. 2012) (noting that "it is impossible to discern which facts Martinez–Ortega necessarily admitted when he pleaded guilty" to an uncharged offense and, therefore, consideration of the original indictment would "be decidedly unfair to the defendant, who may not have admitted to any violent conduct in his plea"). Indeed, this position is supported by the Supreme Court's observations in *Taylor*—the case that established the categorical approach—that "in cases where the defendant pleaded guilty, there often is no record of the underlying facts," and that "if a guilty plea to a lesser . . . offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to" the charged offense. *Taylor v. United States*, 495 U.S. 575, 601–02 (1990).

The government urges us to reach the opposite conclusion and find that the indictments here are proper *Shepard* documents, primarily relying on two cases. The government first relies on *Ruiz-Vidal v. Lynch*, which applied the modified categorical approach in the immigration context. 803 F.3d 1049 (9th Cir. 2015). The petitioner in *Ruiz-Vidal* had previously been charged by the State of California for possession for sale of a controlled substance—identified in the Information as methamphetamine—but ultimately "pleaded no contest to simple possession—a lesser included offense of the sale charge." *Id.* at 1051. At his plea colloquy, Ruiz-Vidal "confirmed that he was pleading no contest to the lesser included offense . . . , not just to an untethered violation" of California's possession law. *Id.* at 1052. This was confirmed by the trial court's minute order, which stated that "Ruiz-Vidal entered a plea to the 'lesser included/reasonably related offense' of 'Count 1' and indicates that Ruiz-Vidal stipulated that a factual basis existed for the plea." *Id.* at 1053. Neither the plea nor the judgment, however, made explicit reference to methamphetamine. Because California criminalizes possession of more substances than are covered by federal law, Ruiz-Vidal was not removable unless it could be shown

that he was convicted of an offense relating to a federally controlled substance, such as methamphetamine.

The Ninth Circuit rejected Ruiz-Vidal's argument that the court was prohibited from considering the factual allegations in the indictment because "by pleading no contest to a lesser included offense, he 'pled to an offense different from the one charged.'" *Id.* at 1053. The court found that Ruiz-Vidal's argument "ignores the meaning of 'lesser included offense,'" stating that "our criminal justice system has long permitted a defendant to be found 'guilty of any lesser offense necessarily included in the offense charged." *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 717–18 (1989)). The court specifically relied on the transcript of the plea colloquy, noting that it "gives [the court] a clear way to connect the references to methamphetamine in the charging document with the conviction" of the lesser offense. *Id.* at 1054 (internal quotation marks and citations omitted). The court thus concluded that, "based only on the limited documents we're allowed to review, it's clear that Ruiz-Vidal pleaded to possession of methamphetamine." *Id.* Because *Ruiz-Vidal* explicitly relied on the plea colloquy to "connect the references to methamphetamine in the charging document with the conviction," *id.*, it is distinguishable. The record here contains no plea colloquy or agreement connecting the crime of conviction with any of the allegations in the indictment.

Next, the government relies on our unpublished decision in *United States v. Alexander*, 642 F. App'x 506 (6th Cir. 2016). *Alexander* concerned whether the defendant's prior Ohio conviction for "gross sexual imposition" constituted a crime of violence under the career offender guidelines enhancement. 642 F. App'x at 507–08. Alexander was charged with rape in an indictment that alleged that he "engaged in sexual conduct with Jane Doe . . . by purposely compelling her to submit by the use of force or threat of force." *Id.* at 511. "Without specifying

which subsection of the gross sexual imposition statute Defendant violated, the sentencing judge accepted Defendant's guilty plea of gross sexual imposition, which it termed in its journal entry 'the lesser included offense under Count(s) 1 of the indictment.'" *Id.* The *Alexander* panel applied Ohio law concerning whether one offense is a lesser included offense of another and found that "the only subsection of the gross sexual imposition statute that could be a lesser included offense of the precise conduct alleged in . . . the indictment is [a section of the statute that required proof that an] offender purposely compels the other person . . . to submit by force or threat of force." *Id.* at 512. Relying on the allegations in the indictment, the court found that the lesser-included offense to which Alexander ultimately pleaded qualified as a crime of violence.

Assuming that *Alexander* was correctly decided, it is distinguishable. Because the state court in *Alexander* explicitly described the crime of conviction as a lesser-included offense of the original charge, the sentencing court was later able to deduce that the defendant was convicted of the particular sub-section that constituted a lesser-included offense of the one charged in the indictment. Here, Tennessee law explicitly includes the entirety of the aggravated-assault offense as a lesser-included offense of several other assault offenses. And, were *Alexander* not distinguishable, it is nonetheless an unpublished decision and is not binding on us.

In situations such as the one before us—where a defendant pleaded guilty to an uncharged offense and the record contains no plea colloquy, no plea agreement, and no other manner in which to connect the crime of conviction with the crime charged in the indictment—district courts applying the modified categorical approach cannot rely solely on the indictment to identify the precise crime of conviction.

## III. Conclusion

The district court's decision granting Dillard relief pursuant to § 2255 is **VACATED** based on *Verwiebe* for the reasons stated. The case is remanded for further proceedings consistent with this opinion.